UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___11/13/2014
```

------------------------------------------------------------ X
                             :

UNITED STATES OF AMERICA,           :
                             :

           -against-            :         09-CR-415-2 (VEC)
                             :

ANTONIO ROSARIO, a/k/a "Chickee,"    :        MEMORANDUM
                             :     OPINION AND ORDER
                  Defendants.    :

                             :
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

       The Court assumes familiarity with the facts of this case, which have been discussed in

numerous prior opinions.  After being convicted at trial, Defendant Antonio Rosario and two co-

defendants successfully appealed their convictions to the United States Court of Appeals for the

Second Circuit, *see United States v. Taylor*, 736 F.3d 661 (2d Cir. 2013).  The Second Circuit

reversed, holding that the introduction of Curtis Taylor's post-arrest statements violated his

rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and caused prejudicial spillover that

violated his co-defendants' rights under *Bruton v. United States*, 391 U.S. 123 (1968).  The case

was remanded for trial and transferred to the undersigned.  Taylor and Samuel Vasquez have

now pled guilty, leaving Rosario as the sole remaining defendant.

       The Government moves *in limine* to (1) refer to the first trial as a "prior proceeding," (2)

allow the admission of Rosario's allegedly false exculpatory statements, (3) allow the admission

of evidence of a second robbery, and (4) allow the admission of evidence that Rosario was

previously arrested in possession of firearms.  For the following reasons, the Government's

unopposed motion for an order requiring the parties to refer to the first trial as a prior proceeding

is GRANTED.  The Government's motion to admit Rosario's allegedly false exculpatory

statements is GRANTED IN PART, and the Government's motions to admit evidence of another robbery and of Rosario's prior possession of firearms are DENIED.

## DISCUSSION

### I.      The Parties Should Refer to the First Trial as a "Prior Proceeding"

The Government moves for an order that the parties should refer to the first trial as a "prior proceeding," and Rosario does not object.  Accordingly, it is hereby ORDERED that the parties should refer to the first trial, when necessary, as a "prior proceeding."  *See United States v. Jones*, 808 F.2d 561, 566-67 (7th Cir. 1986).

### II.     Evidence of Rosario's Allegedly False Exculpatory Statements May Be Admitted

After being arrested, Rosario allegedly "made false exculpatory statements concerning his presence at Lincoln Hospital during the time of the robbery."  *United States v. Taylor*, 767 F. Supp. 2d 428, 434 (S.D.N.Y. 2010) (Marrero, J.) ("*Taylor I*").[1]  The Government seeks to admit these statements and to prove them false "as circumstantial evidence of guilty consciousness [with] independent probative force."  *Id.* (quoting *Henry v. Poole*, 409 F.3d 48, 65 (2d Cir. 2005)).  Rosario claims that his statements were not false and that, even if they were, he did not believe them to be false.  Neither argument has merit.

First, Rosario's statement that he was in the hospital on December 24, 2008, does not accord with hospital records.  Rosario is, of course, free to argue either that he only said that he was in the hospital "around Christmastime" and never said that he was there on Christmas Eve, or that he was mistaken by one day relative to the day he was discharged from the hospital.  The Government has admissible evidence, however, that Rosario (1) claimed to be on the hospital on

---

[1]      The Government also seeks to admit certain inculpatory statements that Rosario made.  Gov't Motion at 5. Rosario does not appear to object to the admissibility of these statements.

Christmas Eve, Gov't Reply Ex. A at 569, and (2) was not.  The Government may introduce this evidence at trial.

Second, Rosario argues that if he misrepresented his location on December 24, 2008, it was inadvertent and therefore it is not probative of his consciousness of guilt.  This argument was considered and rejected by Judge Marrero in 2010.  *Taylor I*, 767 F. Supp. 2d at 434 ("Rosario claims that his post-arrest statements were not deliberately false but, rather, a mistaken belief of his whereabouts on the night of the robbery.").  For the same reasons articulated in Judge Marrero's opinion, this evidence may be admitted; whether any false alibi that Rosario provided was deliberate or inadvertent will be for the jury to decide.  *Id.* at 435 ("Defense counsel is free to argue at trial that Rosario's statements reflect uncertainty and a good faith mistaken understanding of his whereabouts rather than a deliberate falsehood.") (citing *United States v. Davis*, 437 F.3d 989, 996 (10th Cir. 2006)).

Rosario's final objection is that any probative value derived from the consciousness of guilt evidence is "weak circumstantial evidence," *United States v. Treacy*, 639 F.3d 32, 45-46 (2d Cir. 2011), that is substantially outweighed by its significant prejudicial effect, *see* Fed. R. Evid. 403.  Rosario relies on treatises describing the import that juries give to false alibis.  The Court sees no reason to quibble with his assessment that a defendant's changing his alibi repeatedly might make a jury much more likely to convict him – but this is precisely *because* it is evidence of his "consciousness of guilt."  "'[E]vidence is unduly prejudicial only when it tends to have some adverse effect upon a defendant *beyond* tending to prove the fact or issue that justified its admission into evidence.'"  *United States v. Kadir*, 718 F.3d 115, 122 (2d Cir. 2013) (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)) (emphasis in *Kadir*, alteration omitted).

Rosario separately advances several arguments regarding the adequacy of the Government's proposed redactions of his post-arrest statement.[2]  First, he seeks to redact his statement describing a traffic stop that the New York City Police Department ("NYPD") conducted of Vasquez's vehicle while Rosario, Taylor, and Vasquez were inside.  Although Rosario asserts that the jury will draw the conclusion that Rosario was involved in unrelated suspicious activity, the Government has indicated that it intends to call the NYPD officer who stopped the car to testify that he did so as part of the investigation into the charged robbery.  As he was at the first trial, this officer will be available for cross-examination regarding the basis for the stop.  Gov't Reply Ex. B.  The fact that Rosario was in a car linked to the robbery with Vazquez and Taylor is a part of the story of the investigation into the robbery and confirms that Rosario spent time with his alleged co-conspirators; it is therefore admissible.

Rosario seeks to redact a paragraph indicating the Government informed Rosario that Taylor and co-conspirator Luana Miller had filled fraudulent prescriptions at the pharmacy that was later the target of the robbery; Rosario allegedly responded "that was stupid" of Taylor.  *Id.* Ex. C.  Rosario asserts that his statement is "prejudicial on its face" but does not explain why. Def. Mem. Opp. at 24-25.  Even if the probative value of this statement in light of Rosario's concession that Taylor and Miller were involved in the robbery of the pharmacy is minimal, Rosario has not shown any prejudicial effect, much less one that "substantially outweighs" the probative value.  Fed. R. Evid. 403.

Finally, Rosario seeks to redact his denial that he was involved "in a second pharmacy robbery, which occurred on March 9, 2009."  Gov't Reply Ex. C.  This argument appears to hinge on Rosario's theory that the robbery about which he was asked differs from a second

---

[2]     Because the Government consents to redacting the statement that Rosario's license was suspended prior to his arrest the Court does not address that proposed redaction.

robbery in which he may have been implicated.  For the reasons discussed below, the Government will not be permitted to argue that Rosario was implicated in a second robbery. Absent an independent basis to admit evidence that Rosario was asked about a second robbery and denied involvement, such evidence is inadmissible.

The Government's motion to admit Rosario's false post-arrest statements is granted in part.  The Government is directed to redact any reference to Rosario's suspended driver's license and to the second pharmacy robbery.

### III.    Evidence of a Second Robbery Is Not Admissible

The Government moves to admit evidence of a second robbery that Taylor and Rosario allegedly committed in early 2009.  Rosario separately objects to introduction of any such evidence and to introduction of Taylor's alleged description of the second robbery to Miller. Because evidence of the second robbery is inadmissible, the Court does not separately analyze whether a hearsay exception would apply.

The Government offers two arguments in support of admitting evidence of the uncharged robbery; neither is persuasive.  First, the Government argues that the evidence is admissible under Rule 404(b).  The Second Circuit "'follows the 'inclusionary' approach to 'other crimes, wrongs, or acts' evidence, under which such evidence is admissible unless it is introduced for the sole purpose of showing the defendant's bad character." *United States v. Carlton*, 534 F.3d 97, 101 (2d Cir. 2008) (quoting *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996)).  The Government argues that it wishes to introduce evidence of a second pharmacy robbery not to show that Rosario is the type of man who robs pharmacies but instead "to prove a 'signature crime,' *i.e.*, a *modus operandi* where the crimes are 'so nearly identical in method as to ear-mark them as the handiwork of the accused.'" *United States v. Mills*, 895 F.2d 897, 907 (2d Cir. 1990) (quoting 2 J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 404[16], at 404-127 (1985)) (other

citations omitted).  To establish a *modus operandi* two crimes need not be identical; "it is enough that the characteristics relied upon are sufficiently idiosyncratic to permit a fair inference of a pattern's existence."  *United States v. Silker*, 751 F.2d 477, 487 (2d Cir. 1984) (Friendly, J.).

The parties dispute the precise similarity of the two crimes, but the following facts are reasonably clear.  Both robberies probably victimized pharmacies,[3] both targeted drugs and money, and both involved an armed man requiring the employees to lie on the ground.[4]  The second robbery allegedly involved only two of the four co-conspirators to the charged robbery and therefore did not include a driver or a decoy victim, the roles Vasquez and Miller, respectively, played in the charged robbery.  The Government argues that Rosario's "signature" move was to rob a pharmacy with a gun and at least one accomplice, but that is hardly the sort of idiosyncrasy required to make this sort of evidence admissible.  Boiled down, the Government's argument is that Rosario is an armed robber, precisely the sort of propensity evidence that is barred by Rule 404.  *See United States v. Sampson*, 385 F.3d 183, 192 & n.7 (2d Cir. 2004) ("For the evidence relating to Sampson's involvement in the 2000 offenses to be probative of whether he committed the 1998 offenses, a juror would have to reason that the events in 2000 showed that Sampson was a drug dealer. . . . This sort of propensity reasoning is plainly barred by Federal Rule of Evidence 404(b)."); *cf. United States v. Sappe*, 898 F.2d 878, 879-80 (2d Cir. 1990) (evidence of a *modus operandi* was properly admitted where the Government showed that "during a five week period in the summer of 1987, Sappe had robbed three banks and attempted

---

[3]      The Court rejects Rosario's argument that the second robbery did not target a pharmacy because Miller's statements to investigators indicated that the robbery targeted a "party supply store."  Def. Mem. Opp. at 1, 4.  At the earlier trial Miller testified that Taylor told her that he and another person "hit another party supply store – because that's what we referred to the pharmacy as, as a party supply store."  Tr. at 299.

[4]      The Government argues that in both cases Rosario allegedly struck someone.  During the first robbery, Rosario allegedly struck Miller at Miller's request; during the second robbery, Rosario allegedly went off-script and violently attacked an apparent victim.  The Court declines to count this as a similarity.

to rob a fourth within a nine block area in midtown Manhattan.  In each instance, Sappe had threatened a bank teller with a toy gun hidden inside a newspaper.").

The Government alternatively asserts that the second robbery is admissible as direct evidence of the charged conspiracy.  "An act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged."  *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992); *see also United States v. Quinones*, 511 F.3d 289, 308 (2d Cir. 2007).  This rule of law is not applicable here, however, as the indictment charged a one-day, one-pharmacy robbery conspiracy.  Indictment ¶ 1.  Although evidence that Rosario and Taylor robbed another pharmacy later on could be evidence of an act in furtherance of a general pharmacy-robbing conspiracy, it is irrelevant to the charged conspiracy to rob a specific "pharmacy located in the vicinity of East 34th Street and 2nd Avenue . . . [o]n or about December 24, 2008."  *Id.*  For the same reason, evidence of a subsequent robbery of a different pharmacy does not "complete the story of the crime on trial" because it is neither part of the same one-robbery conspiracy charged nor "inextricably intertwined with the evidence regarding the charged offense."  *United States v. Hsu*, 669 F.3d 112, 118 (2d Cir. 2012).  Instead, the second robbery is just that – a second, "other" crime, that may or may not have been committed by some of the perpetrators of the charged crime.

The Government's motion to admit evidence of the second robbery is denied.

### IV.    Evidence of Rosario's Prior Possession of Firearms Will Not Be Admitted

Finally, the Government moves to admit evidence that in 2002 Rosario was arrested with three fully-loaded firearms (a shotgun, a .22-caliber revolver, and a .380 pistol) and ammunition.  This evidence would be admissible to prove Rosario's ability to obtain firearms, the absence of a mistake in Rosario's possession of firearms, or to rebut a "mere presence" defense.  *See Taylor I*,

767 F. Supp. 2d at 440-41.  Rosario avers that he will not dispute any of those issues, and the

Government acknowledges that, in light of his concession, "the Government does not believe

that evidence of the defendant's prior firearms possession will be material to any disputed issue."

Gov't Motion at 17.  Consequently, the Government's motion to admit evidence of Rosario's

prior possession of firearms is denied without prejudice to renewal.

## CONCLUSION

For the above-stated reasons, the Government's motion for an order to refer to the first

trial as a prior proceeding is GRANTED, the Government's motion to admit evidence of

Rosario's allegedly false exculpatory statements is GRANTED IN PART, and the Government's

motions to admit evidence of the second robbery and of Rosario's prior possession of firearms

are DENIED.  It is hereby ORDERED that all parties shall refer to Rosario's first trial as a "prior

proceeding" and shall not indicate to the jury that there has previously been a trial in this case.

The Clerk of the Court is respectfully directed to terminate Dkt. 149.


**SO ORDERED.**

**Date:  November 13, 2014**                                      **VALERIE CAPRONI**
           **New York, New York**                                      **United States District Judge**