USDS DNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/14/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                    :

UNITED STATES OF AMERICA,      :

      -against-                :        09-CR-415-2 (VEC)

ANTONIO ROSARIO, a/k/a "Chickee,"  :        MEMORANDUM
                                    Defendant.  :       OPINION AND ORDER

------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

      The Court assumes familiarity with the facts of this case, which have been discussed in numerous prior opinions. Defendant Antonio Rosario moved *in limine* to preclude the Government from offering lay testimony and maps purporting to show Rosario's location based upon records from Rosario's cellular providers that show the cell towers to which Rosario's phone connected around the time of the charged robbery. Dkt. 144. Thereafter, the Government indicated that it intended to offer expert testimony instead of the lay testimony, Dkt. 170 Ex. A; Rosario therefore assented to the dismissal of his motion to preclude lay testimony as moot and instead moved to preclude the Government's expert testimony as untimely, unreliable, and substantially more prejudicial than probative. Dkt. 175. For the following reasons, Rosario's motion is denied.

## DISCUSSION

      The Government seeks to offer the testimony of Federal Bureau of Investigation ("FBI") Special Agent John C. Hauger, Jr., of the FBI's Cellular Analysis and Survey Team ("CAST"), who intends to testify regarding his opinion as to the location of cellular phones purportedly belonging to Rosario and his alleged co-conspirators based on his analysis of records from their

cellular service providers. Rosario objects to Agent Hauger's testimony on three grounds. Primarily, Rosario argues that Agent Hauger's methods and techniques are unreliable and therefore his testimony is not admissible pursuant to Rule 702 of the Federal Rules of Evidence. Rosario also argues that Agent Hauger's testimony should be excluded as substantially more prejudicial than probative and because the Government made an untimely disclosure pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure. None of these arguments is persuasive.

### I. Agent Hauger's Methods and Techniques are Reliable Under Rule 702

The role of district courts as gatekeepers under Rule 702 is well-established. *See United States v. Morgan*, --- F. Supp. 3d ---, No. 12-CR-223(VM), 2014 WL 5317508, at *6 (S.D.N.Y. Oct. 3, 2014) ("[T]he role of the district court [i]s that of a gatekeeper charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'") (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)). The Court's ultimate object under Rule 702 is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). But the Supreme Court has rejected a "rigid" standard that would require general acceptance of an expert's opinion in the scientific community because such a standard would be "inconsistent with the liberal thrust of the Federal Rules." *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042 (2d Cir. 1995) (citing *Daubert*, 509 U.S. at 588).

Agent Hauger's methods are uncomplicated. He obtains data from a target's cellular service provider that includes the time phone calls were made or received by the target's cellular phone and the cell tower to which or through which the target's phone connected at the time a

call originated. *See* Gov't Letter of Nov. 7, 2014 (Dkt. 174) Ex. A Ex. 1 ("CAST Slides") at 1. He then charts the location of the towers on a map. *Id.* Because the cell records also indicate to which "sector," or 120 degree arc, of the tower the target's phone connected, Agent Hauger shades in an area reflecting the direction that sector of the tower faces. *Id.* at 3. Finally, Agent Hauger charts other cellular towers nearby and inserts lines at the outer boundaries of the sector to which the phone connected toward a location 75 percent of the distance to the next closest tower. Gov't Opp. at 1. Agent Hauger intends to testify that "the area between the lines indicates the projected coverage area of the tower and sector the phone utilized during the call setup," CAST Slides at 9, meaning that "it is likely that the phone that placed each of [the charted] calls was at that time within the area delimited by . . . those two lines." Gov't Opp. at 1. Agent Hauger has field tested cell towers – although not the specific towers at issue here – and has determined that 75 percent of the distance to the nearest tower is a conservative estimate of the area in which the telephone was located when it connected to the specific tower. *Id.* at 2.

      Rosario lodges a number of objections to the reliability of Agent Hauger's methods. First, he asserts, without support, that Agent Hauger's experience tracking kidnap victims and fugitives is unrelated to historical cell site analysis. Def. Mot. at 4. The FBI formed CAST specifically for the purpose of analyzing call records, *see United States v. Davis*, No. 11-CR-60285, 2013 WL 2156659, at *4, 6 (S.D. Fla. May 17, 2013); there is no evidence that CAST or Agent Hauger relies on other tracking techniques. Second, Rosario asserts that "Agent Hauger's method is premised on the assumption that a cell phone will always connect to the tower closest to it. This assumption is simply incorrect." Def. Mot. at 4; *see United States v. Evans*, 892 F. Supp. 2d 949, 953 (N.D. Ill. 2012). This precise argument has been considered and rejected by other courts. *See, e.g., United States v. Machado-Erazo*, 950 F. Supp. 2d 49, 55 (D.D.C. 2013) ("[Defendant] argues that [the agent's] testimony derives from the premise that a cell phone

always connects to the closest cell tower at the time a call is placed. However, the expert report . . . indicates that [the agent's] conclusions are derived from projecting a likely area from which a call was made, based on the specific tower (and antenna) to which a call connected.") (quotation marks and citations omitted). Moreover, it is not an accurate statement of the basis for Agent Hauger's opinion. The Court's understanding is that he will testify that a cell phone will generally connect to the nearest tower – not that it always does. Indeed, were Agent Hauger's theory premised on the assumption that Rosario describes, it would be highly suspect. But Agent Hauger's theory leaves room for factors other than proximity to determine the tower to which a cell phone will connect. These vagaries of cell phone technology affect the persuasiveness of the circumstantial evidence, but they do not render his testimony inadmissible. *See, e.g., United States v. Fama*, No. 12-CR-186(WFK), 2012 WL 6102700, at *4 (E.D.N.Y. 2012) ("[Defendant] lists a variety of factors that purportedly can impact the communication of a cellular phone and a particular cellular tower . . . [but] these concerns go to the weight of [the expert's] testimony, not the reliability.").

Other courts have come to similar conclusions regarding the reliability of CAST techniques and admissibility of substantially similar testimony. *See United States v. Carpenter*, No. 12-20218, 2013 WL 6385838, at *6 (E.D. Mich. Dec. 6, 2013); *United States v. Eady*, No. 12-CR-415(DCN), 2013 WL 4680527, at *3 (D.S.C. Aug. 30, 2013); *Machado-Erazo*, 950 F. Supp. 2d at 57; *United States v. Reynolds*, No. 12-20843, 2013 WL 2480684, at *5 (E.D. Mich. June 10, 2013); *Davis*, 2013 WL 2156659, at *6-7; *United States v. Jones*, 918 F. Supp. 2d 1, 5 (D.D.C. 2013); *Fama*, 2012 WL 6102700, at *3-4; *United States v. Allums*, No. 08-CR-30(TS), 2009 WL 806748, at *2 (D. Utah Mar. 24, 2009). Rosario's attempt to distinguish these cases is unpersuasive. The fact that the towers in this case were located in Manhattan may affect the role

that factors other than geographical proximity played in determining to which tower the phones connected, but this concern speaks to the weight of Agent Hauger's testimony, not its reliability.

Agent Hauger's testimony is premised upon techniques sufficiently reliable to be admitted under Rule 702.

## II. Agent Hauger's Testimony Is More Probative than Prejudicial

Rosario next argues that Agent Hauger's testimony and the corresponding exhibits should be excluded under Rule 403 because they are substantially more prejudicial than probative. Def. Mot. at 6-9. This argument, too, has been soundly rejected by other courts. *See, e.g., Machado-Erazo*, 950 F. Supp. 2d at 54-58; *Reynolds*, 2013 WL 2480684, at *4; *Jones*, 918 F. Supp. 2d at 6.

Rosario attacks the relevance of Agent Hauger's testimony, asserting that connection to a cell tower is relevant only to whether the phone was within the maximal range of the tower, not whether it was close to the tower. Because he concedes that he was within 34.6 miles of the tower to which his phone connected, Rosario believes that the evidence is irrelevant. Def. Mot. at 7. Evidence is relevant, however, if "it has any tendency to make a fact more . . . probable than it would be without the evidence." Fed. R. Evid. 401(a). The general rule is that a cell phone will connect to the closest tower; the fact that this rule admits of exceptions and that other factors may affect a phone's "choice" of towers does not eviscerate the relevance of the evidence. *Machado-Erazo*, 950 F. Supp. 2d at 57-58.

The prejudice that Rosario purports to identify is simply the concern that the jury will credit Agent Hauger's testimony and conclude that Rosario was near the pharmacy when it was robbed. This is not the sort of prejudice against which Rule 403 guards. Insofar as Rosario is concerned that the jury will accord undue weight to Agent Hauger's estimations of Rosario's locations given alleged flaws in Agent Hauger's methodologies, the remedy is simple: Rosario

should cross-examine Agent Hauger about these purported flaws and may call his own expert to testify to what, if anything, he believes the records actually establish.

Rosario also takes issue with Agent Hauger's inclusion of only the originating tower of each call and not the tower to which the target's phone connected when the call terminated. Def. Mot. at 7-8. The Government explains that "[a] phone, when placing or receiving a call, picks the best signal it can find when selecting the originating cell tower. Once the phone is in the network on a call, computers in the network can connect the phone to *any* tower that the phone can 'see,' based on complex calculations regarding network load and efficiency." Gov't Opp. at 2. In his motion, Rosario does not challenge this characterization; he is free to do so on cross-examination or rebuttal, but the Government has met its burden in establishing the admissibility of Agent Hauger's testimony.

Rosario's challenge to the exhibits on which Agent Hauger intends to rely, including the maps that he has prepared charting the nearby towers and their position relative to the scene of the robbery, is rejected for substantially the same reasons. Moreover, to the extent these maps reflect unchallenged data from cellular service providers, the Government is "entirely within its rights to use charts to draw the jurors' attention to particular evidence culled from a voluminous set of records." *United States v. Yousef*, 327 F.3d 56, 157-58 (2d Cir. 2003); *see* Fed. R. Evid. 1006. Assuming that the maps are accurate, properly titled, and not described as proving more than they actually prove, the Government's summary charts will be admissible.

**III.    The Government's Notice Was Adequate under Rule 16(a)(1)(G)**

Rosario also contends that the Government's notice was untimely and inadequate under Rule 16(a)(1)(G). Def. Mot. at 2. The Government's notice was provided less than two weeks before trial, but it was not so untimely under the circumstances of this case as to warrant exclusion. The Court notes that Rule 16 does not provide a specific timeline for expert

disclosures. The Advisory Committee Notes to the 1993 Amendment to Rule 16 provide: "Although no specific timing requirements are included, it is expected that the parties will make their requests and disclosures in a timely fashion." *See also United States v. Ojeikere*, No. 03-CR-581(JGK), 2005 WL 425492, at *8 (S.D.N.Y. Feb. 18, 2005).

      Although disclosure of the expert was made fairly late, the substance of the proposed testimony was not a surprise to the Defendant. At Rosario's first trial, the Government relied on cell phone data as circumstantial evidence to establish Rosario's (and his cohorts') presence at the scene of the crime. Rosario's initial motion *in limine* on retrial sought to exclude such testimony when offered by a lay person. *See* Def. Mot. in Lim. at 2-8. His arguments against Agent Hauger's testimony are substantially similar to the arguments he advanced against the lay testimony except that Rosario has abandoned the argument that "[a]s a lay witness, incapable of speaking authoritatively on the topic of cell site analysis or its limitations, no amount of cross examination could correct the serious misimpressions [his] testimony would create." *Id.* at 8. Moreover, Rosario has had time to brief and file a separate motion in opposition to Agent Hauger's testimony, and the Court has had time to fully consider Rosario's arguments. Finally, the content of the notice provided in the Government's second disclosure relative to Agent Hauger's testimony, including up-to-date drafts of the slides which he intends to introduce, is more than adequate to satisfy the strictures of Rule 16. In short, Rosario has suffered no prejudice from the timing of the disclosure.

      Although the Court will not exclude Agent Hauger's testimony, the Government is reminded that it is obligated to make discovery – particularly expert disclosures – in a timely fashion. Two weeks before trial begins – but for the unique circumstances of this case – would not be timely in the context of a case that was reversed and remanded for trial five months ago.

## CONCLUSION

The Court need not decide whether Agent Hauger's testimony establishes Rosario's presence at the scene of the crime beyond a reasonable doubt; it is enough that the evidence is reliable and that its prejudicial effect does not substantially outweigh its probative value. Accordingly, Rosario's motion to preclude exclude Agent Hauger's expert testimony is DENIED.  Rosario's motion *in limine* to preclude lay testimony as to cell site data is DISMISSED as moot.  The Clerk of the Court is respectfully directed to terminate Dkt. 144 and Dkt. 175.

**SO ORDERED.**

**Date:  November 14, 2014**　　　　　　　　　　**VALERIE CAPRONI**
　　　**New York, New York**　　　　　　　　　**United States District Judge**