USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___2/9/2015___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                  :
UNITED STATES OF AMERICA,            :
                                  :
               -against-           :            09-CR-415-2 (VEC)
                                  :
ANTONIO ROSARIO, a/k/a "Chickee,"   :          <u>MEMORANDUM</u>
                                  :      <u>OPINION AND ORDER</u>
                    Defendant.   :
                                  :
-------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

      The Court assumes familiarity with the facts of this case, which have been discussed in several prior opinions.[1]  Defendant Antonio Rosario was convicted, after a one-week jury trial, of conspiracy to violate the Hobbs Act, in violation of 18 U.S.C. § 1951; Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(b)(1) and 2; and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and (2).  Rosario renews his motion pursuant to Rule 29 for a judgment of acquittal and moves pursuant to Rule 33 for a new trial. For the following reasons, Rosario's motions are DENIED.

## BACKGROUND

      At trial the Government's theory – from the outset through its closing – was that Rosario served as the gunman for a four-person robbery crew that robbed the Nature's Cure Pharmacy in December 2008.  *See, e.g.*, Tr. 54, 619.  One alleged co-conspirator, Luana Miller, testified at trial; she described in detail the role that Rosario and his erstwhile co-defendants, Samuel

---

[1]    *See United States v. Taylor*, 736 F.3d 661 (2d Cir. 2013); *superseded by* 745 F.3d 15 (2d Cir. 2014); *reh'g en banc denied*, 752 F.3d 254 (2d Cir. 2014); *United States v. Rosario*, No. 09-CR-415-2(VEC), 2014 WL 6076364 (S.D.N.Y. Nov. 14, 2014); *United States v. Rosario*, No. 09-CR-415-2(VEC), 2014 WL 5870708 (S.D.N.Y. Nov. 13, 2014); *United States v. Taylor*, 767 F. Supp. 2d 441 (S.D.N.Y. 2011); *United States v. Taylor*, 767 F. Supp. 2d 428 (S.D.N.Y. 2010);  *United States v. Taylor*, 672 F. Supp. 2d 539 (S.D.N.Y. 2009).

Vasquez and Curtis Taylor, played in the robbery.  Tr. 137, 141-52.[2]  Miller's testimony was substantially corroborated by a video of the robbery taken by the store's surveillance cameras and cell phone records tending to show that Rosario's cell phone was near the pharmacy at the time of the robbery and, shortly after the robbery, placed a call to his mother's telephone from a location somewhere between the pharmacy and his mother's home.  GX 602, GX 402, Tr. 332.[3] The defense called no witnesses but vigorously cross-examined Ms. Miller and attacked the probative value of the circumstantial evidence.  The defense attempted to demonstrate that the cell phone records were not definitive as to the location of the cell phones and attempted to capitalize on the lack of DNA from Rosario on clothing that had been found in a co-conspirator's car that looked similar to the clothing worn by the robber during the robbery.

At the close of the Government's case, Rosario moved pursuant to Rule 29 for a judgment of acquittal.  Tr. 569.  In particular, defense counsel "move[d] to dismiss any aiding and abetting, as that's clearly not the theory the Government has advanced."  *Id.*  The Court responded that there was "nothing in the charge on aiding and abetting" and agreed that "this does not appear to be a case tried on the aiding and abetting theory."  *Id.*  The Court's initial instructions to the jury did not include an aiding and abetting charge.  Tr. 686-712.

Towards the end of its first day of deliberations, the jury sent a note to the Court stating: "On Count Two, does any involvement, *e.g.,* driving [the] getaway car, count towards Charge No. 2, or does [the] count only apply if Rosario was inside the store, took the property, etc., as detailed on page 16 of the instructions, lines 12 through 19?"  Tr. 721.  The parties disagreed as

---

[2]        Vasquez and Taylor each pled guilty to related charges prior to trial; neither testified at trial.

[3]        Government witnesses also included the pharmacist who was working during the robbery; records custodians from telephone companies; Federal Bureau of Investigation ("FBI") lab technicians; FBI Special Agent Steven Jensen, who interviewed Rosario after his arrest; and FBI Special Agent John Hauger, a member of the FBI cellular analysis team.

to the appropriate response, and the Court excused the jury for the night to permit the parties to brief and argue the issue.  After hearing from the parties, the Court provided the jury with a supplemental instruction regarding aiding and abetting liability as to the Hobbs Act robbery count only and permitted supplemental summations to focus on the newly provided charge.  Tr. 759-63.  Several hours after the supplemental arguments and instruction, the jury returned a verdict of guilty on all counts.  Tr. 766.

## DISCUSSION

Rosario makes two arguments in support of his Rule 33 motion for a new trial.[4]  First, he alleges that it was error for the Court to provide a supplemental instruction on aiding and abetting liability in response to the jury's note.  Second, he takes issue with several statements made by the Government during summation.  None of the Defendant's complaints warrants a new trial.

"Federal Rule of Criminal Procedure 33(a) provides that 'upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires.'" *United States v. James*, 712 F.3d 79, 107 (2d Cir. 2013) (quoting Fed. R. Crim. P. 33(a)) (alteration omitted).  "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice."  *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001).  "To grant the motion, 'there must be a real concern that an innocent person may have been convicted.'"  *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) (quoting *Ferguson*, 246 F.3d at 134) (alteration omitted).

---

[4]     Rosario renewed his Rule 29 argument for a verdict of acquittal without supporting argument; that motion is denied.

I.     **The Court's Supplemental Instruction on Aiding and Abetting**

Rosario contends that by instructing the jury on the theory of aiding and abetting the Court violated his Fifth Amendment due process rights.  Rosario largely assumes the premise that it was an error to provide the supplemental instruction and then argues that he was prejudiced by the instruction.  The Court rejects the premise that the instruction was inappropriate and also rejects the assertion that Rosario was prejudiced by the instruction.

**A.  The Court's Instruction Was Not Error**

Rosario does not argue that the Court's instruction was wrong as to the law.  *See* Tr. 757. Instead, he advances two arguments why it was improper to give any instruction on aiding and abetting liability.  First, Rosario claims that there was no factual predicate to support an instruction on aiding and abetting; second, he claims that such an instruction was inappropriate because the Government did not argue the case on an aiding and abetting theory.  Neither argument is persuasive.

"No instruction may be given unless there is a foundation in the evidence to support it." *United States v. Horton*, 921 F.2d 540, 543 (4th Cir. 1990) (internal quotation marks omitted). Rosario argues that no reasonable juror could have convicted Rosario on an aiding and abetting theory because no party presented evidence that Rosario played any specific role in the robbery aside from being the gunman.  Def. Mem. at 7, Reply at 2-4.  Although Rosario is correct that no party advanced evidence of his having played any role other than gunman in the robbery, the Court does not find that it would have been unreasonable or irrational for the jury to have concluded, based on the testimony regarding the cell towers to which Rosario's phone was connecting around the time of the robbery, that the Government had proven, beyond a reasonable doubt, that Rosario accompanied Taylor, Vasquez, and Miller to rob the pharmacy.  GX 402.  It would also not have been unreasonable – regardless of how the Government argued the case –

4

for the jury to have credited some, but not all, of Miller's testimony.  Tr. 212-316; *see Robinson v. Cattaraugus Cnty.*, 147 F.3d 153, 160 (2d Cir. 1998) ("[A] jury is entitled to believe some parts, and to disbelieve other parts, of the testimony of any given witness.").  The jury could have easily concluded that the Government proved, beyond a reasonable doubt, that Rosario was one of the four robbers, but that Miller's testimony and the video of a masked gunman left lingering doubt (particularly given the absence of Rosario's DNA on clothing that might have been associated with the robbery) whether he was the gunman or played a different role, such as lookout or getaway driver.  Thus, there was clearly a factual predicate to support an aiding and abetting charge.

Next, Rosario contends that instructing the jury on the theory of aiding and abetting was improper because it was not the theory under which the Government tried the case.  Rosario relies heavily on *United States v. San Juan*, a 38-year-old Second Circuit case addressing the prosecution of a woman charged with failing to declare a large amount of cash that she brought across the border from Canada.  545 F.2d 314, 315 (2d Cir. 1976).  In that case, while Ms. San Juan was on the bus at the border, she was asked whether she had acquired any items in Canada; she mentioned only "candy for her children."  *Id.*  At that time, she was not provided the Customs form that asked, *inter alia*, whether she was carrying currency (and she was not otherwise asked that question while on the bus).  *Id.*  Based on officials' suspicions, she was removed from the bus and brought to a Customs office, where agents searched her packages and discovered $77,500.  *Id.*  In the Customs office, agents required her to complete the form.  *Id.*

Ms. San Juan was prosecuted for failing affirmatively to declare, while still on the bus, that she was bringing $77,500 in cash across the border.  *Id.* at 316.  The District Court clarified with the Government prior to trial that there "[was]n't any question about" the time or location of the offense.  *Id.*  The Government agreed, and "proceeded on its theory that the crime was

5

committed on the bus.  This was made clear in the prosecutor's opening statement to the jury, in his argument on the admissibility of evidence . . . and in the prosecutor's closing argument to the jury."  *Id.* at 316-17.  "The judge's charge, however, apparently left open the possibility that the jury could find that [the defendant] committed the crime in the customs house. . . . But this was manifestly unfair to defendant.  Because of the Government's consistent position throughout the trial, the defense's arguments, particularly in summation, were directed to showing that no crime was committed on the bus."  *Id.* at 319.  The Second Circuit identified substantial evidence that the defendant could have adduced if she had been on notice that she might be convicted for statements she made in the customs house.  *Id.*  Because the Court and the Government explicitly told San Juan that she need not worry about the possibility that she would be convicted for her behavior in the customs house, it was fundamentally unfair that she may have been convicted for that behavior.

*San Juan* is far removed from this case.  In cases in which the defendant *was* on notice of the possibility of conviction based on an aiding and abetting theory, the Circuit has affirmed as reasonable the decision to respond accurately to juries' questions, even if the Government did not try the case on that theory.  *See, e.g., United States v. Mucciante*, 21 F.3d 1228, 1237 (2d Cir. 1994); *United States v. James*, 998 F.2d 74, 78-79 (2d Cir. 1993) (permitting supplemental instruction on aiding and abetting liability even though Government had argued that it "was a straightforward case in which [the defendant] was waiting outside the bank ready to act as the getaway driver"); *see also United States v. Welbeck*, 145 F.3d 493, 497 (2d Cir. 1998) (instructions regarding lesser-included offenses, even when not the theory pursued at trial, could fairly be given as accurate response to jury's question).  The Court finds Judge Wilkinson's opinion in *Horton* particularly instructive:

> Appellant argues . . . that the aiding and abetting instruction should not have been given because the government's theory of the case had always been that [he] was the principal. . . . While appellant correctly states that when a party chooses not to advance a particular theory, it is not *entitled* to an instruction on that theory even if there is evidentiary support for the theory in the record, the court is not *precluded* from giving any instruction for which there is evidentiary support.  The fact that a party did not pursue a particular theory does not preclude the trial judge from giving an instruction on that theory where it deems such an instruction to be appropriate.

921 F.2d at 544 (emphasis in original).

The Second Circuit's precedents are in accord with *Horton.*  In *Mucciante*, the Second Circuit affirmed a supplemental instruction on aiding and abetting liability that then-District Judge Pierre N. Leval gave in response to a jury's note.  21 F.3d at 1236.  Defendant argued that "his defense was fatally undermined by the timing of the aiding and abetting charge," which came after "the charging conference, [where] Judge Leval struck the aiding and abetting instruction requested by the government."  *Id.*  "It was not until the jury's note . . . that Judge Leval reversed himself and gave the requested instruction.  [The Circuit did not] see how this turn of events hindered Mucciante's defense."  *Id.*  The opinion in *Mucciante* (as in *James*) specifically distinguishes *San Juan*.  *Id.* at 1236-37.

Rosario's contention that *Mucciante* does not apply because the defendant in that case cast his appeal in the language of prejudicial variance and constructive amendment, rather than in the language of the Due Process Clause, misses the mark.  The Circuit was not so formalistic as to dismiss the Defendant's appeal because he selected the wrong right to assert; it simply rejected his contention that Judge Leval's decision to give an aiding and abetting instruction worked a "fundamental unfairness" on the defendant.  *Id.* at 1237.  "Unlike Mrs. San Juan, therefore, Mucciante was not effectively denied an opportunity to defend against all the charges against him."  *Id.*  Neither was Rosario.

**B.  Rosario Was Not Prejudiced by the Supplemental Instruction**

Rosario has claimed that "extreme prejudice" resulted from the Court's instruction in light of the Court's earlier indication that it would not charge the jury on aiding and abetting. This argument might conceivably be persuasive if the Court had so indicated before the presentation of the Government's case.  It did not, however.  Tr. 568 ("Your Honor, the government rests."); Tr. 569 ("I have nothing in the charge on the aiding and abetting theory."). Rosario's assertion that he "relied to his detriment on the Court's representation that the jury would not be charged on an aiding and abetting theory and the government's acquiescence in that decision" relies on examples of questions that he otherwise would have asked on cross-examination.  Reply at 5.  The fatal flaw in Rosario's argument is that the cross-examination that Defendant argues would have been different *preceded* the announcement by the Court that it did not intend to charge on aiding and abetting.  Rosario has given no explanation why he did not pursue these lines of inquiry given the fact that – at the time of his cross-examination – he was on notice that aiding and abetting was charged in the indictment and was a theory on which he could be convicted.[5]

Rosario also alleges that he "relied, to his detriment, on the government's clear and unwavering theory of the case throughout the trial."  Def. Mem at 5.  This argument, too, suffers from Rosario's concession that he was on notice of the possibility that the Government could convict him on the theory of aiding and abetting.  Tr. 739.  Rosario knew that the indictment charged 18 U.S.C. § 2 (and even if it had not, "an aiding and abetting charge is arguably implicit in every indictment," *Mucciante*, 21 F.3d at 1234; *see also United States v. Marmolejos*, No. 99-

---

[5]        Rosario's counsel also indicated, prior to the Court's remark on aiding and abetting liability, that he would "make a Rule 29 motion, [] read two stips, then [] rest."  Tr. 556.  He added a third stipulation but otherwise adhered to the announced plan.  Tr. 569, 576.

CR-1048-3(DC), 2013 WL 2003241, at *1 (S.D.N.Y. May 10, 2013) (Chin, J.); *Graziano v. United States*, No. 12-CV-738(JFB), 2013 WL 298116, at *8-9 (E.D.N.Y. Jan. 25, 2013)). The fact that the Government attempted to convince the jury that Rosario was the gunman does not mean that Rosario could have reasonably believed that he would be acquitted if he successfully created reasonable doubt that he was the gunman but did not effectively shake the jury's confidence in Ms. Miller's testimony regarding the identity of the other conspirators.

And yet, Rosario is arguing precisely that – he believed that all he had to do was shake the jury's confidence that he was the male in the pharmacy with Ms. Miller because the Government was focused on showing that he actively participated in the crime. But the jury does not have to accept the Government's case hook, line, and sinker in order to convict – indeed, juries can and often do convict defendants based on divergent and even mutually-incompatible theories of liability. *See Schad v. Arizona*, 501 U.S. 624, 630 (1991); *United States v. McIntosh*, 753 F.3d 388, 392 (2d Cir. 2014) (*per curiam*). Moreover, juries can convict when some jurors believe that the defendant was a principal and others believe he was an aider and abettor. *United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005) ("[A]iding and abetting as charged in this case falls naturally within the *Schad* analysis."); *United States v. Ferguson*, 676 F.3d 260, 279 (2d Cir. 2011) ("In dicta, we have suggested that a jury is unanimous even if some jurors convicted on a theory of principal liability and others on aiding and abetting.") (citing *United States v. Peterson*, 768 F.2d 64, 67 (2d Cir. 1985) (Friendly, J.)).

The Government in this case presented a very strong case that (1) Rosario was associated with Taylor and Vasquez and the three were together, in the vicinity of the robbery, at the time of the robbery, Tr. 131-32, 414, 566, GX 402; (2) Rosario's phone was used to place a call to Rosario's mother shortly after the robbery from a location that was between the drugstore and Rosario's home, GX 602, GX 402; (3) Rosario had discussed robbing the store with Taylor,

Vasquez, and Miller, Tr. 133-34; and (4) Rosario was the man inside the drug store brandishing a gun during the course of the robbery, Tr. 141-53.  The Government's attempt to convince the jury of all four of these facts does not preclude the jury from believing only the first three – which lead to a strong inference that, regardless of his precise role in the robbery, Rosario played a substantial part in helping the robbery succeed.  Rosario was on notice of all of this evidence, and any belief that he needed only to rebut the fourth fact to be acquitted would simply not have been reasonable.[6]

Finally, Rosario's specific assertions of prejudice are unavailing.  First, Rosario argues that he could have, but did not, introduce evidence that he could not have been the getaway driver because his license was suspended, *see* Anders Decl. Ex. B at 1.  Prior to trial, Rosario argued against permitting the jury to know that he had a suspended license, *see* Def. Mem. Opp. (Dkt. 155) at 24.   At the time of his motion, neither the Court nor the Government had given him any reason to suspect that the jury would not be charged on aiding and abetting.[7]  Moreover, although Rosario chose not to develop it during his supplemental closing statement, the record contained evidence that Vasquez preferred to drive his own car (which was used during the robbery) rather than let Rosario drive.  Tr. 414.  Thus, Defendant had facts from which he could have argued that if the jury was not persuaded that he was in the drugstore, they must acquit because he could not have played the other active role of driver.[8]

---

[6]     While this would be true under any circumstances, the fact that Rosario was also indicted, tried, and convicted of conspiracy to commit the robbery further underscores the extent to which Rosario's trial strategy had to encompass all involvement in the offense, not just involvement as the gunman.

[7]     The Court also strongly doubts that any reasonable juror would have excluded Rosario as a potential getaway driver just because he had a suspended license.  After all, if a person is willing to commit an armed robbery, it seems unlikely that he would not also be willing to violate the New York Vehicle and Traffic Law.

[8]     Of course, that would have still left the possibility that Rosario was the lookout.

Second, Rosario asserts that he could have cross-examined two Government witnesses differently had he known that he was susceptible to being convicted on an aiding and abetting theory.  Leaving aside that this cross-examination occurred *prior* to any assurance that the jury would not be instructed on aiding and abetting, Rosario's assertions of prejudice are unpersuasive.  First he claims that he would have elicited from Miller testimony regarding her certainty of the roles that each conspirator played in the robbery.  Def. Mem. at 6.  Miller's testimony, however, admitted to no uncertainty regarding Rosario's role, Tr. 141-53 ("Chickee came in the door behind me," "Chickee screamed again for him to hang up," "Chickee had gone into his jacket and that's when I saw the gun," "Chickee said – at some point he yelled at me to shut the fuck up, bitch, and he hit me in my [chin]," "Chickee told me to come and open up the register," "Chickee yelled for the pharmacist to get up off the floor and to come and open the register . . .").  Miller also testified that Taylor was "right in front of the pharmacy," acting as a lookout, Tr. 145, and that Vasquez was waiting in the car ready to drive them away, Tr. 152.  Miller expressed no uncertainty in the roles assigned to each conspirator, and Rosario was not prejudiced by his failure to have her testify affirmatively that Rosario was not the driver or the lookout.

Rosario also asserts that he could have cross-examined Agent Jensen as to whether he sincerely believed that Rosario was the only member of the robbery crew strong enough to punch Miller in the face and knock her back, as the gunman did on the video.  Def. Mem. at 6.  Agent Jensen testified that he told Rosario this "to cater to his ego . . . to build him up," presumably to get him to boast that he had, in fact, been the gunman who punched Miller.  Tr. 442-43.  Agent Jensen testified that when he "explained that the punch was so hard it knocked [Miller] into the shelving unit and [Rosario] was the only one capable of doing that, [Rosario] looked up at [him] and said 'yeah.'"  Tr. 443.  Insofar as additional questions might have revealed that Agent Jensen

11

actually believed that any of the three suspects was physically capable of punching Ms. Miller hard enough to knock her backwards, this evidence would have been relevant and helpful even in the absence of an aiding and abetting instruction.  If, on the other hand, additional questions had revealed that Agent Jensen genuinely believed that only Rosario could have hit Miller hard enough to push her backwards, that testimony would have tended to implicate Rosario as the gunman.  Either way, failure to pursue that line of inquiry could not have affected the outcome of the trial.

Third, Rosario asserts that he could have made additional arguments during summation.  Def. Mem. at 6.  This argument fails because, in response to the jury's note and the decision to instruct on aiding and abetting liability, the Court permitted both parties to make supplemental closing statements.  Tr. 755-762; *see Welbeck*, 145 F.3d at 496; *James*, 998 F.2d at 79; *Horton*, 921 F.2d at 548.  Whatever arguments Rosario wanted to make, he had the opportunity to make.[9]

**C.  Any Error Was Harmless**

Even if it were error to instruct the jury on aiding and abetting liability, such an error did not have "a 'substantial and injurious effect or influence in determining the jury's verdict.'" *United States v. Ferguson*, 676 F.3d 260, 276-77 (2d Cir. 2011) (quoting *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (*per curiam*)); *see also Skilling v. United States*, 561 U.S. 358, 414 (2010); *United States v. Vilar*, 729 F.3d 62, 78-79 (2d Cir. 2013).  "The defendant[] here would

---

[9]       Rosario objects to the Court's sustaining three Government objections during his supplemental closing statement.  *See* Def. Mem. at 6.  The Government objected when Rosario abandoned arguing whether the Government had proven his guilt and started mischaracterizing the Government's position.  Defense counsel argued that the Government was telling the jury that Rosario was not the gunman.  *See, e.g.,* Tr. 760 ("Now, the government now [sic] wants to have it both ways"); *id.* ("[T]he government is telling you that A[n]tonio Rosario was in the pharmacy and at the same time telling you he was somewhere else"); Tr. 761 ("Is the government going to charge Ms. Miller with perjury at this point for having lied about where [Antonio] Rosario is?").  But the Government never changed its theory and did not argue that Rosario might not have been the gunman.  Tr. 761-62.  It simply asked the jury to follow the Court's instruction, which accurately stated that Rosario could be guilty of robbery even if the jury found that he was not the gunman.  In short, the Defense summation was improper, and the Government's objections were properly sustained.

not be prejudiced by [an] infirm instruction if . . . the jury would have necessarily found the defendant[] guilty on one of the properly instructed theories of liability." *Ferguson*, 676 F.3d at 277.

The evidence that Rosario was physically present with the robbers throughout the robbery was substantial – Miller testified that he was there and cell records corroborated her testimony by establishing that Rosario's phone was located near the pharmacy during the robbery and between the pharmacy and his home in the Bronx shortly after the robbery. Moreover, his phone was used to place a call to Rosario's mother – not the sort of call that a stranger would likely have made from his phone. Rosario's defense team did a commendable job making the evidence, including testimony from Rosario's coconspirator who was with him as he robbed the store, seem less credible than it was – but at the end of the day a reasonable jury could not have reached a different verdict. *Cf. United States v. Nouri*, 711 F.3d 129, 140 (2d Cir. 2013) ("We have no doubt that, had the jury been properly instructed, it would have found the defendant[] guilty.").

The inevitability of Rosario's conviction, even without the aiding and abetting instruction, was further underscored by the fact that the jury convicted him of brandishing a firearm in furtherance of the robbery, despite not having been instructed that the aiding and abetting instruction would apply to that count. Rosario argues that the jury could have applied the Court's aiding and abetting instruction to Count III because the Court "never explicitly instructed the jury that it could *not* convict Mr. Rosario on Count III on an aiding and abetting theory." Reply at 4 (emphasis in original). But the aiding and abetting instruction was limited to Count II (at the direct request of both parties, *see* Tr. 749-50) and was given in response to a note focused solely on Count II, Tr. 721. Moreover, it incorporated the elements of robbery into the substantive instruction, Tr. 762. The jury was not free to speculate that such an instruction might

also have implications for the separate crime of brandishing a firearm during the robbery (which is less intuitively susceptible to an aiding and abetting theory anyway). *See, e.g., United States v. Jass*, 569 F.3d 47, 55 (2d Cir. 2009).

## II.   The Government's Statements During Summation

Rosario also challenges three statements made by the Government during summation. "A defendant asserting that a prosecutor's remarks warrant a new trial 'faces a heavy burden, because the misconduct alleged must be so severe and significant as to result in the denial of his right to a fair trial." *United States v. Banki*, 685 F.3d 99, 120 (2d Cir. 2011) (quoting *United States v. Locascio*, 6 F.3d 924, 945 (2d Cir. 1993)) (alterations omitted). "When evaluating a claim of improper argument, th[e] Court 'must consider the objectionable remarks within the context of the entire trial.'" *Id.* (quoting *United States v. Espinal*, 981 F.2d 664, 666 (2d Cir. 1992)).

Rosario first challenges the Government's assertion, during its summation, that some facts were "not in dispute, because there really can't be any disagreement about" them.  Tr. 617. The Government listed these facts, saying "[t]here can't be any dispute that" the pharmacy was robbed, *id.*; one of the robbers brandished a gun during the robbery, Tr. 618; the robbery affected interstate commerce, *id.*; and there was an agreement between two or more people to commit the robbery, *id.*  These statements are seemingly uncontroversial; indeed, Rosario did not challenge them at trial or during his summation.  But Rosario now contends that by prefacing its comments with the idea that those facts were not in dispute, the Government implicitly shifted the burden of proof onto the defendant to rebut the evidence.  Rosario relies on precedent holding that the Government "must avoid commenting in a way that trenches on the defendant's constitutional rights . . . [f]or example, . . . [by] comment[ing] on the failure of the defendant to testify, or invit[ing] the jury to 'presume' in the absence of countervailing evidence that the government's

view of the case is correct, or suggest[ing] that the defendant has any burden of proof." *United States v. Parker*, 903 F.2d 91, 98 (2d Cir. 1990) (internal citations omitted). In this case, it would have been better if the Government had phrased the argument in terms of the Government's belief regarding the real issue in contention (*e.g.*, "we don't believe there is any dispute about these facts, but if there is, it is the Government's burden of proof"). But despite the Government's somewhat infelicitous phrasing, the Government and the Court made clear to the jury numerous times that the Government had the burden of proof, including on the specific facts the Government suggested were not in dispute. *See* Tr. 616-17, 689-90. Moreover, no prejudice resulted from its comments, as the Government focused on matters that were, in fact, *not* disputed by the Defendant during his summation.

Second, Rosario asserts that the Government impermissibly suggested that Rosario was guilty because of something that he did not say in response to questioning by Agent Jensen. Rosario decontextualizes the Government's summation, which noted that, in response to Jensen's feigned praise for Rosario's strength in knocking his female coconspirator into the shelves with one blow, Rosario "said 'yeah,' and he laughed." Tr. 624. The Government asked: "[I]s that a normal response? . . . What would an innocent person say[?] . . . An innocent person would say: What are you talking about? That wasn't me. I have no idea what you're talking about. An innocent person would not laugh and say, 'yeah.'" Tr. 624-25. Rosario contends that, by comparing what he said to what a hypothetical innocent person might have said, the Government was "us[ing] an arrested person's silence against him." Def. Mem. at 8-9; *see Doyle v. Ohio*, 426 U.S. 610, 618 (1976). Indeed, had Rosario simply not responded to Agent Jensen's question, the Government would not have been able to use his response against him. *See United States v. Hale*, 422 U.S. 171, 181 (1975). But Rosario has pointed to no case that supports the proposition that the Government cannot draw distinctions between the response that

the defendant actually gave during post-arrest questioning and the response that an innocent person might reasonably be expected to give in the same situation.

Finally, Rosario takes issues with statements that the Government made during its rebuttal summation.  The Government indicated: "You don't have Luana Miller's cell site [data]. Fine.  You know why you don't need it?  Because she admitted to everything she did.  You don't need her cell site data to tell you where she was because she sat up there and she told you.  She told you where she was."  Tr. 685.[10]

Rosario argues that the Government was impermissibly asking the jury to draw an inference from his failure to testify.  *See Griffin v. California*, 380 U.S. 609, 613 (1965); *United States v. Okatan*, 728 F.3d 111, 116 (2d Cir. 2013).  But that ignores the context of the statements made.  The Government was responding to an argument the Defendant made in his summation, questioning the Government's case because it had not introduced evidence of calls made from Ms. Miller's cell phone.   During Defendant's summation, Rosario emphasized the absence of cell site data from Miller's phone that could corroborate her account of her whereabouts.  Tr. 659-60 ("[W]here was the map for Luana Miller's cell site information? . . . Wouldn't it have been helpful to see a map of her cell site information so we could have tracked her movements?").  The Government's comments about Miller's testimony are, therefore, fair comment that directly responded to the defense's complaint that the Government did not present cell site data for Miller along with the other conspirators.  The Government is not precluded by *Griffin* "from fairly responding to an argument of the defendant."  *United States v. Robinson*, 485 U.S. 25, 34 (1988).  "'The test governing whether a prosecutor's statements amount to an improper comment on the accused's silence in violation of the Fifth Amendment looks at the

---

[10]     The Court sustained Rosario's contemporaneous objection to this statement.  Tr. 686.

statements in context and examines whether they naturally and necessarily would be interpreted by the jury as a comment on the defendant's failure to testify.'" *United States v. Whitten*, 610 F.3d 168, 199 (2d Cir. 2010) (quoting *United States v. Knoll*, 16 F.3d 1313, 1323 (2d Cir. 1994)). In context, the Government's remarks during rebuttal summation would not naturally or necessarily be interpreted as a comment on Rosario's failure to testify.

Assuming *arguendo* that some or all of the Government's statements identified above were improper, no prejudice resulted to the defendant. "When reviewing claims of prosecutorial misconduct based on inappropriate remarks in the Government's opening statement or summations, [courts order a new trial] if the misconduct caused 'substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process.'" *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 95 (2d Cir. 2014) (quoting *United States v. Elias*, 285 F.3d 183, 190 (2d Cir. 2002)). "In determining whether the Government's [alleged] misconduct so substantially prejudiced [the defendant] as to deprive him of a fair trial, [courts] consider '(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the misconduct.'" *United States v. Truman*, 688 F.3d 129, 144 (2d Cir. 2012) (quoting *Elias*, 285 F.3d at 190 (alterations omitted). In this case, any misconduct, and the Court finds there was none, at most constituted "one, or a few isolated, brief episodes," *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1990), not a "studied pattern of improper remarks," *id.* at 355. And, absent any misconduct, the jury would certainly still have convicted Rosario of all counts – the Government presented a credible cooperating witness who was well corroborated.

## CONCLUSION

For the foregoing reasons, Rosario has not demonstrated that the interest of justice requires a new trial.  Accordingly, his motion for a new trial pursuant to Rule 33 is DENIED. The Clerk of the Court is respectfully directed to terminate Dkt. 201.


**SO ORDERED.**

**Date:  February 9, 2015**
       **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**